UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| BARBARA CALDERON, ) | |
|    *Plaintiff*, ) | |
| ) | |
|    *vs.* ) | 1:12-cv-00783-JMS-MJD |
| ) | |
| MICHAEL ASTRUE, ) | |
| COMMISSIONER OF THE SOCIAL SECURITY ) | |
| ADMINISTRATION, ) | |
|    *Defendant.* ) | |

## ENTRY REVIEWING THE COMMISSIONER'S DECISION

Plaintiff Barbara Calderon applied for disability, disability insurance benefits, and supplemental security income from the Social Security Administration on March 24, 2009. After a series of administrative proceedings and appeals, including a hearing in December 2010 before Administrative Law Judge ("ALJ") Tammy Whitaker, the ALJ issued a finding on June 8, 2011 that Ms. Calderon was not entitled to disability benefits or supplemental security income. In April 2012, the Appeals Council denied Ms. Calderon's timely request for review of the ALJ's decision, rendering that decision the final decision of the Defendant, Commissioner of the Social Security Administration ("the Commissioner"), for the purposes of judicial review. 20 C.F.R. § 404.981. Ms. Calderon then filed this action under 42 U.S.C. § 405(g), requesting that the Court review the Commissioner's denial.

## I.
### RELEVANT BACKGROUND

Ms. Calderon was forty years old at the time of her disability application on March 24, 2009. [Dkt. 13-2 at 16, 66.] She has an eighth-grade education and worked up until 2009 primarily at a nursing home as a Certified Nurses' Assistant. [*Id.* at 29, 68-70.] Ms. Calderon

claims she is disabled for a variety of impairments, which will be discussed as necessary below.

She was last insured for purposes of disability on December 31, 2011.  [*Id.* at 16.]

## II.
### UNDERLYING DECISIONS

**A. The ALJ's Decision**

Using the five-step sequential evaluation set forth by the SSA, the ALJ issued an opinion on June 8, 2011.  [Dkt. 13-2 at 16-30.]  The ALJ found as follows:

- At Step One of the analysis, the ALJ found that Ms. Calderon had not engaged in substantial gainful activity[1] since the alleged onset date of her disability.  [*Id.* at 18.]

- At Step Two, the ALJ found that Ms. Calderon suffered from several severe impairments including a tear of the left knee anterior cruciate ligament, cubital and carpal tunnel syndrome, left shoulder pain, lower back pain syndrome with thoracic kyphosis, osteoarthritis, osteopenia, sleep apnea, vitamin D deficiency, obesity, fibromyalgia, generalized anxiety disorder, panic disorder without agoraphobia, obsessive-compulsive disorder, bulimia, major depressive disorder, posttraumatic stress disorder, and borderline intellectual functioning.  The ALJ further concluded that several other physical impairments were not medically determinable impairments including, among other things, Ms. Calderon's history of headaches and migraines.  [*Id.* at 18-19.]

- At Step Three, the ALJ found that Ms. Calderon did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments.  The ALJ concluded that Ms. Calderon had the residual functional capacity ("RFC") to perform sedentary work except that, among other things, "she must be allowed to sit or stand alternatively at will and must be allowed to stay in the new position for 5-10 minutes before resuming the prior position."  [*Id.* at 22-23.]

- At Step Four, the ALJ found that Ms. Calderon did not have the capacity to perform any of her past relevant work.  [*Id.* at 28.]

---

[1] Substantial gainful activity is defined as work activity that is both substantial (*i.e.* involves significant physical or mental activities) and gainful (*i.e.* work that is usually done for pay or profit, whether or not a profit is realized).  20 C.F.R. § 404.1572(a) and § 416.972(a).

- Finally, at Step Five, considering Ms. Calderon's age, education, work experience, RFC, and the testimony of a vocational rehabilitation expert ("VE"), the ALJ determined that jobs existed in the State of Indiana that Ms. Calderon could perform, such as a surveillance system monitor. [*Id.* at 29.]

Based on these findings, the ALJ concluded that Ms. Calderon was not entitled to receive disability, disability insurance benefits, or supplemental security income. [*Id.* at 30.]

### B. The Appeals Council's Decision

On June 15, 2011, Ms. Calderon requested that the Appeals Council review the ALJ's decision. [*Id.* at 12; *see also* dkt. 13-6 at 64-71.] In support of her request, Ms. Calderon submitted additional evidence which included a May 24, 2011 Headaches Medical Source Statement from treating physician Alicia Risch, M.D. (the "Migraine Report"). [Dkts. 13-6 at 67; 18-1 at 127-130.] There is nothing in the record to indicate that Ms. Calderon submitted the Migraine Report to the ALJ, and it is dated fifteen days before the ALJ issued her opinion. On April 23, 2012, the Appeals Council denied Ms. Calderon's request for review of the ALJ decision, stating it "considered…the additional evidence listed on the enclosed Order of Appeals Council," which included the Migraine Report, and "found that this information does not provide a basis for changing the [ALJ's] decision". [Dkt. 13-2 at 2-7.] Accordingly, the Appeals Council's decision became the final decision of the Commissioner for the purposes of judicial review.

### III.
### STANDARD OF REVIEW

In this action, Ms. Calderon argues both that the ALJ erred in concluding that she was not entitled to disability, disability insurance benefits, or supplemental security income, and that the Appeals Council erred in denying her request that it review and remand the ALJ's decision. These challenges are subject to different standards of review.

### A. Review of the ALJ Decision

The Court's role in this action is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008), this Court must afford the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted).

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court *must* affirm the denial of benefits. Otherwise the Court will remand the matter back to the Social Security Administration for further consideration; only in rare cases can the Court actually order an award of benefits. *See Briscoe v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005).

> To evaluate a disability claim, an ALJ must use the following five-step inquiry:
>
> (1) [is] the claimant…currently employed, (2) [does] the claimant ha[ve] a severe impairment, (3) [is] the claimant's impairment…one that the Commissioner considers conclusively disabling, (4) if the claimant does not have a conclusively disabling impairment,…can [he] perform h[is] past relevant work, and (5) is the claimant…capable of performing any work in the national economy[?]

*Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001) (citations omitted). After Step Three, but before Step Four, the ALJ must determine a claimant's RFC, which represents the claimant's physical and mental abilities considering all of the claimant's impairments. The ALJ uses the RFC at Step Four to determine whether the claimant can perform his own past relevant work and

if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 416.920(e).

### B. Review of the Appeals Council Decision

Whether the ALJ's decision is supported by substantial evidence is distinct from whether the Appeals Council properly rejected Ms. Calderon's appeal. *Farrell v. Astrue*, 692 F.3d 767, 770-71 (7th Cir. 2012). As to the latter issue, a district court's "review of the question whether the [Appeals] Council made an error of law in applying this regulation is *de novo*….In the absence of any such error, however, the Council's decision whether to review is discretionary and unreviewable." *Perkins v. Chater*, 107 F.3d 1290, 1294 (7th Cir. 1997).

20 C.F.R. § 404.970 provides that:

> If new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the [ALJ] hearing decision. The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the [ALJ] hearing decision. It will then review the case if it finds that the [ALJ's] action, findings, or conclusion is contrary to the weight of the evidence currently of record.

Medical evidence postdating the ALJ's decision that does not speak to the claimant's condition at or before the time of the administrative hearing "could not have affected the ALJ's decision and therefore does not meet the materiality requirement." *Getch v. Astrue*, 539 F.3d 473, 484 (7th Cir. 2008). This principle holds even if the records document new treatment for "the very same ailments" at issue in the underlying disability proceedings. *Schmidt v. Barnhart*, 395 F.3d 737, 742 (7th Cir. 2005). Evidence suggesting that a claimant has developed additional impairments or that his impairments have worsened may form the basis for a new application but are not a basis to reverse the decision on a previously submitted application. *Getch*, 539 F.3d at 484.

## IV.
### DISCUSSION

#### A. Challenge to the ALJ Decision

Ms. Calderon challenges the ALJ's decision for one reason, arguing that the ALJ erred at Step Five because the hypothetical questions she asked the VE did not accurately reflect her RFC assessment. [Dkt. 15 at 7-8.] Specifically, Ms. Calderon argues that as part of her RFC assessment the ALJ concluded that Ms. Calderon "must be allowed to sit or stand alternatively <u>at will</u> and must be allowed to stay in the new position for 5-10 minutes before resuming the prior position." [*Id.* at 8 (emphasis in original).] She asserts that the ALJ only asked the VE about jobs with a "sit/stand option," but not an "at will sit/stand option." [*Id.*] The Commissioner responds that the ALJ's hypothetical questions to the VE accurately reflected Ms. Calderon's RFC because a "sit/stand option" is equivalent to an "at will sit/stand option" since "option" by definition means that it is at will. [Dkt. 19 at 5-6.]

When questioning the VE, the ALJ used the term "sit/stand option" and stated that the option "would allow the person to sit or stand alternatively, provided that when they change positions, they would need to be in the changed position for 5 to 10 minutes before changing to another position…." [Dkt. 13-2 at 97-98; *see also id.* at 102.] The Court agrees with the Commissioner that the ALJ's use of the term "sit/stand option" in her hypothetical questions accurately reflected the need for Ms. Calderon to be able to sit or stand at will. This is consistent both with the common meaning of "option" – *i.e.*, the power or right to choose – and with case law on this very issue. *See Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007) ("Schmidt argues that the ALJ's analysis was deficient because he did not specify the frequency with which [the claimant] would need to alternate between sitting and standing. We find Schmidt's contention unavailing, however, because the ALJ did restrict Schmidt to work that allowed her an opportunity to sit or

stand at her 'own option'"); *Brown v. Astrue*, 2012 U.S. Dist. LEXIS 129202, *44 (N.D. Ind. 2012) ("the use of the word option implies that a claimant may sit or stand as needed and at will"); *see also Hedspeth v. Astrue*, 2012 U.S. Dist. LEXIS 130160, *16-17 (E.D. N.C. 2012) (ALJ's hypothetical which included a "sit/stand option" was equivalent to "sit/stand option at will"); *Wright v. Astrue*, 2012 U.S. Dist. LEXIS 7163, *25-26 (M.D. N.C. 2012) ("at will" nature of sit/stand option was reasonably implied).

Accordingly, the Court declines to overturn the ALJ's decision based on Ms. Calderon's Step Five challenge.

### B. Challenge to the Appeals Council Decision

As background, the Court notes that Ms. Calderon argued in her opening brief that the Commissioner erroneously omitted Exhibits 22F through 34F from the administrative record filed electronically with the Commissioner's Answer. [Dkt. 15 at 8-9.] In his response brief, the Commissioner acknowledged this "clerical error," stated that he had since filed the missing exhibits, [*see* dkt. 18-1], and stated that "[t]he Commissioner does not object to [Ms. Calderon] filing a supplemental brief to address these pages, provided that the issues raised in such supplemental brief be limited to the information contained in Dkt. 18-1. Further, the Commissioner anticipates that he may respond to any such new arguments as well." [Dkt. 19 at 7.] In reply, Ms. Calderon raised her argument regarding the Appeals Council decision for the first time, as it was the first time the records were available for discussion. [Dkt. 20 at 2-6.] .

Specifically, Ms. Calderon argues that, given the Migraine Report she submitted with her request for review to the Appeals Council, the Appeals Council erroneously denied that request. [*Id.*] She asserts that: (1) headaches can be a medically determinable impairment that may cause limitations; (2) the ALJ determined that Ms. Calderon's headaches were not severe so did not

factor them into her RFC assessment; (3) the Migraine Report (issued prior to the ALJ's decision) indicates that Ms. Calderon's headaches significantly limit her; (4) the Migraine Report indicates that Ms. Calderon could not perform the one job the ALJ identified in its opinion – surveillance system monitor – because it involves bright lights, looking at a computer monitor, and stress which could all trigger a headache; (5) the Migraine Report is new because it was not submitted to the ALJ; (6) the Migraine Report is material because it concerns Ms. Calderon's condition at the time of the ALJ decision and discusses whether her headaches could cause functional limitations preventing her from working as a surveillance system monitor; and (7) the Migraine Report is contrary to the weight of the evidence before the ALJ because the ALJ did not adequately consider the triggers for Ms. Calderon's headaches. [*Id.* at 3-5.] Despite Ms. Calderon's statement that she "acknowledges the Commissioner's right to respond to these additional arguments," [*id.* at 2], the Commissioner did not do so.

The Seventh Circuit Court of Appeals has recognized that the form language the Appeals Council used here – that it "considered the additional evidence…[and] found that this information does not provide a basis for changing the [ALJ's] decision" – is ambiguous:

> We note that this text, which often appears in orders of the Appeals Council rejecting plenary review, is not as clear as it might be. On the one hand, it might indicate that the Appeals Council found the proffered new evidence to be immaterial, but on the other hand it might indicate that the Council accepted the evidence as material but found it insufficient to require a different result.

*Farrell*, 692 F.3d at 771.

The *Farrell* court found that the form language should be interpreted to mean that the Appeals Council "has rejected [the claimant's] new evidence as non-qualifying" because it was not new and/or material. *Id.* Accordingly, in order to determine whether the Appeals Council

should have considered the Migraine Report and reversed the ALJ's decision, the Court must first determine whether the Migraine Report was "new and material."

Absent a response from the Commissioner,[2] it is undisputed that the Migraine Report is "new" to the administrative record. Indeed, the Migraine Report pre-dates the ALJ decision by just fifteen days, and Ms. Calderon did not submit the Migraine Report to the ALJ. Accordingly, it is "new." *Schmidt*, 395 F.3d at 742 ("new" for purposes of a remand means "not in existence or available to the claimant at the time of the administrative proceeding") (citation omitted).

Further, the Commissioner has not disputed that the Migraine Report is also "material," and the Court agrees with that characterization. Evidence is "material" for purposes of a remand if there is a "'reasonable probability' that the Commissioner would have reached a different conclusion had the evidence been considered." *Perkins*, 107 F.3d at 1296. The Migraine Report was completed by Dr. Alicia Risch, who had been treating Ms. Calderon for three years when she completed the Report. [Dkt. 18-1 at 127.] She states that Ms. Calderon gets headaches approximately once per week, or four to five times per month, and that each headache lasts 48 to 72 hours. [*Id.*] Triggers for Ms. Calderon's headaches include bright lights and stress. [*Id.* at 128.] The Migraine Report characterizes Ms. Calderon's headaches as "severe," and further states that, due to her headaches, Ms. Calderon is "[i]ncapable of even 'low stress' work," that "[d]uring times [she] has a headache [she would] generally be precluded from performing even basic work activities and need a break from the workplace," that she is likely to be "off task" while at work

---

[2] The Court assumes that if the Commissioner opposed Ms. Calderon's request for remand based on the Appeals Council's treatment of the Migraine Report, he would have responded to Ms. Calderon's arguments. *See Greenlaw v. United States*, 554 U.S. 237, 243-44 (2008) ("[W]e rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present….Our adversary system is designed around the premise that the parties know what is best for them, and are responsible for advancing the facts and arguments entitling them to relief") (quotation omitted). In any event, the Court will substantively address the merits of Ms. Calderon's request.

25% or more of the time, that on average she is likely to be absent from work as a result of her headaches more than four days per month, and that "looking/focusing on [a] computer screen can trigger headaches." [*Id.* at 127-30.]

The Migraine Report directly contradicts the ALJ's conclusion that Ms. Calderon's headaches do not affect her ability to work, [dkt. 13-2 at 19]. Indeed, Dr. Risch opines that Ms. Calderon is incapable of even low stress work, could not perform even basic activities during a time she has a headache, would be "off task" 25% or more of the time, and is likely to miss more than four days of work per month. Additionally, the ALJ's conclusion that Ms. Calderon could perform the job of surveillance system monitor, which involves "[m]onitor[ing] premises of public transportation terminals to detect crimes or disturbances, using closed circuit television monitors…[and observing] television screens that transmit in sequence views of transportation facility sites," [dkt. 13-6 at 69], is directly contradicted by Dr. Risch's opinion that bright lights and looking or focusing on a computer screen could trigger headaches. The Court finds that, had the Commissioner considered the Migraine Report, there is a reasonable probability that a different conclusion would have been reached.[3]

## V.
### CONCLUSION

The Appeals Council erred in its determination that the Migraine Report was not new and/or material evidence warranting its review of the ALJ decision. Accordingly, the Court **VACATES** the decision denying benefits and **REMANDS** this matter back to the SSA for fur-

---

[3] Additionally, the ALJ's hypothetical questions to the VE applied to an employee who would only miss one day of work per month on average. [*See, e.g.*, dkt. 13-2 at 100, 107.] Conversely, Dr. Risch opined that Ms. Calderon is likely to be absent from work as a result of her headaches more than four days per month. [Dkt. 18-1 at 129.] Indeed, the VE specifically testified that absence for one eight-hour day per month would be "all that would be tolerated" by hypothetical employers. [Dkt. 13-2 at 109.]

ther proceedings pursuant to 42 U.S.C. § 405(g) (sentence four). [4]  Final judgment will enter accordingly.

01/11/2013

                                                             Hon. Jane Magnus-Stinson, Judge
                                                             United States District Court
                                                             Southern District of Indiana

**Distribution via ECF only:**

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov

Norman Lamont Reed
reedsmithlaw@aol.com

---

[4] While the distinction between a sentence four and sentence six remand is often blurred when the subject of the remand is new and material evidence, the Court finds that Ms. Calderon properly requested a sentence four remand, [dkt. 20 at 6], and that a sentence four remand is appropriate in this context – where the new evidence had already been presented to the Appeals Council, and not for the first time to this Court. *See, e.g., Ingram v. Comm'r of Social Security Administration*, 496 F.3d 1253, 1267 (11th Cir. 2007) (sentence six remand only available when "evidence not presented to the Commissioner *at any stage of the administrative proceeding* requires further review") (emphasis added)).